**DEVELOPMENT BANK OF THE PHILIPPINES, Plaintiff,**

v.

**CHEMTEX FIBERS INC., Defendant.**

**No. 85 Civ. 1146 (EW).**

United States District Court, S.D. New York.

Sept. 11, 1985.

Cichanowicz, Callan, Carcich & Keane New York City, for plaintiff; Michael J. Carcich Alfred F. Koller, New York City, of counsel.

Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, for defendant; Wayne A. Cross, Susan L. Arinaga, New York City, of counsel.

OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, the Development Bank of the Philippines ("DBP"), was the guarantor of loans made by defendant Chemtex Fibers Inc. ("Chemtex") to American Philippine Fiber Industries Inc. ("APFI"). Chemtex, an American corporation incorporated in New York, is engaged in the business of rendering technical and engineering services, including the design of plants and machinery for the manufacture of synthetic fibers. APFI, a corporation organized under the laws of the Republic of the Philippines, with its principal place of business in Manila, contracted with Chemtex in 1976 for assistance in dismantling a used synthetic fiber plant in Virginia for reassembly and operation in the Philippines. Chemtex also agreed to provide financing for the project through disbursements up to $5.1 million, receiving in exchange promissory notes from APFI guaranteed in turn by DBP. APFI defaulted on some of the notes, and payment was made by DBP as guarantor.

DBP alleges in this action that Chemtex submitted false accounts of the disbursements made by it on APFI's behalf, and seeks to recover moneys paid to Chemtex in excess of the amounts it actually disbursed under theories of fraud and unjust enrichment. In addition, DBP alleges a civil violation of the Racketeer Influenced and Corrupt Organizations Act (RICO),[1] predicated upon Chemtex's alleged fraudulent use of the mails and international telephone and telex facilities. Chemtex moves, under the arbitration clause contained in the Loan Agreement, for a stay of proceedings in this Court, and an order compelling the parties to arbitrate their differences, which DBP opposes.

■ At the outset, DBP claims that it, as the guarantor, was not a party to the contract, and that the arbitration clause is not applicable to it.[2] This construction of the contract is without substance. While the agreement is in form a loan agreement between the lender, Chemtex, and the borrower, APFI, the guarantor, DBP, is a signatory and a party to the agreement. DBP in addition, along with the other parties, initialled every page, including the page containing the arbitration clause. The provision for giving notice to parties to the contract lists the guarantor, and gives DBP's address.[3] DBP relies for its position on the decision of our Court of Appeals in *Interocean Shipping Co. v. National Shipping & Trading Corp.*[4] This reliance is misplaced. In *Interocean Shipping*, the Court of Appeals held that a guarantor not a signatory to a charter party was not bound by the arbitration clause in that agreement. The guarantee was embodied in a separate document, which did not incorporate the terms of the charter party. The situation in this case is entirely different; DBP is a signatory to the agreement containing the arbitration clause. The attempt by DBP, as the guarantor, to remove itself from the contract is contradicted by the document. As a party to the agreement, its claims against any other party are covered by the arbitration clause.

■ DBP further argues that its RICO claim is not subject to arbitration under the Federal Arbitration Act. DBP relies for this proposition upon the decision in *S.A. Minercao da Trinidade-Samitri v. Utah International Inc.*[5] In *Samitri,* the Court analogized RICO claims to anti-trust claims, which courts have long held not to be subject to arbitration.[6] The Court in *Samitri* reasoned that RICO, like the Sherman Act, involves substantial public and community interests, the safeguarding of which Congress did not intend to leave in the hands of arbitrators. For this reason, the Court held, claims under RICO do not fall within the strong preference for arbitration over litigation established by the Federal Arbitration Act.[7]

*Samitri* is substantially weakened by the recent decision of the Supreme Court in *Mitsubishi Motors Corp. v. Soler Chrys-*

---

1. 18 U.S.C. § 1962 *et seq.*

2. The clause provides that
   Any dispute between the parties to this Agreement shall be referred to arbitration at such place as may be agreed upon, and in the event of a failure so to agree within 30 days of the date of request to arbitrate, then in New York City under the rules of the International Chamber of Commerce. The agreement on any arbitration award made hereunder shall be final.
   Loan Agreement, Exhibit A to Affidavit of Roghi Yazgi, at 19–20, para. I.

3. *Id.* at 20.

4. 523 F.2d 527 (2d Cir.1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976).

5. 576 F.Supp. 566 (S.D.N.Y.), *aff'd,* 745 F.2d 190 (2d Cir.1984).

6. *See American Safety Equipment v. J.P. Maguire,* 391 F.2d 821 (2d Cir.1968); *Hunt v. Mobil Oil Corp.,* 410 F.Supp. 10, 25 (S.D.N.Y.1976), *aff'd,* 550 F.2d 68 (2d Cir.), *cert. denied,* 434 U.S. 984, 98 S.Ct. 608, 54 L.Ed.2d 477 (1977); *see also Cobb v. Lewis,* 488 F.2d 41, 47 (5th Cir.1974); *Helfenbein v. International Indus., Inc.,* 438 F.2d 1068, 1070 (8th Cir.), *cert. denied,* 404 U.S. 872, 92 S.Ct. 63, 30 L.Ed.2d 115 (1971); *A. & E. Plastik Pak Co. v. Monsanto Co.,* 396 F.2d 710, 715–16 (9th Cir.1968).

7. 9 U.S.C. § 1, *et seq.*

*ler-Plymouth, Inc.*[8] In *Mitsubishi*, the Supreme Court rejected the rule in *American Safety* where the antitrust claims sought to be litigated arose in an international commercial setting. In such a context, the Court held, "concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the needs of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a domestic context."[9] This case, like *Mitsubishi*, arises in the context of international commerce; the desire for certainty and predictability in international commercial transactions is as compelling here as it was for the Supreme Court in *Mitsubishi*; the interest of the domestic community in the enforcement of the federal anti-rackeeting statute in these circumstances is certainly no stronger than the interest in the enforcement of American antitrust principles found wanting in *Mitsubishi*, and is indeed arguably a great deal less strong.

The Supreme Court has in recent cases repeatedly stressed that the Federal Arbitration Act establishes a strong preference for arbitration, which is to be given presumptive effect in doubtful cases.[10] This preference for arbitration is strengthened in the international context.[11] In view of the recent guidance provided by the Supreme Court in *Mitsubishi*, and taking into account the preference for arbitration in the international commercial context established by the prior decisions, this Court is satisfied that plaintiff's RICO claims are arbitrable under the clause contained in the loan agreement.[12] Accordingly, proceedings in the present action are stayed pending the completion of arbitration, and the parties are hereby ordered to proceed to the arbitration of plaintiff's claims under the loan agreement.

So ordered.

---

**8.** —— U.S. ——, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

**9.** 105 S.Ct. at 3355. *Cf. The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (effect given to forum selection clause depriving United States courts of jurisdiction in international marine towage contract).

**10.** *See, e.g., Dean Witter Reynolds, Inc. v. Byrd,* —— U.S. ——, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983).

**11.** *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 516–17, 94 S.Ct. 2449, 2455–56, 41 L.Ed.2d 270 (1974) (securities fraud claim not arbitrable under domestic law arbitrable in international transaction).

**12.** At oral argument upon the motion, counsel for plaintiff suggested that Article V(2)(b) of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, embodied in 9 U.S.C. § 201, authorizes American courts to hold that RICO claims are not arbitrable as contrary to public policy. This argument misunderstands the relevant provision of the Convention. Article V(2)(b) states that "Recognition and enforcement of an arbitral award may ... be refused if the competent authority in the country where recognition and enforecement is sought finds that: ... (b) The recognition or enforcement of the award would be contrary to the public policy of that country." 21 U.S.T. at 2520. As this language makes clear, the provision does not permit domestic authorities to deny recourse to arbitration; it is directed instead to the post-arbitral stage at which an award is enforced by domestic courts. The Supreme Court has observed that "the efficacy of the arbitral process requires that substantive review at the award-enforcement stage remain minimal." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 105 S.Ct. at 3360. Whatever the permissible inquiry after conclusion of an arbitration proceeding, it is clear that the Convention does not contemplate the expression of local public policy as a barrier to the arbitrability of claims.