Israel BRENER and Pablo
Brener, Plaintiffs,

v.

BECKER PARIBAS INC., A.G. Becker Paribas Incorporated, Warburg Paribas Becker Inc., A.G. Becker Holdings, Inc., A.G. Becker Paribas Holdings, Inc., A.G. Becker Paribas Group, Inc., Paribas Corp., Compagnie Financiere de Paribas, and Alvin Corwin, Defendants.

No. 84 Civ. 5872 (CHT).

United States District Court,
S.D. New York.

Dec. 31, 1985.

Rosenberg & Tulis, New York City (Jeffrey Rosenberg, Allan E. Mayefsky, of counsel), Torre, Garman & Amdur, East Rutherford, N.J. (Harry L. Garman, of counsel), for plaintiffs.

Brown, Wood, Ivey, Mitchell & Petty, New York City (James K. Manning, Thomas McC. Souther, of counsel), for defendants Becker Paribas Inc., Becker Holdings, Inc., Becker Paribas Holdings, Inc., Paribas Corp. and Alvin Corwin.

## OPINION

TENNEY, District Judge.

In this securities fraud action, the plaintiffs, Israel Brener and Pablo Brener, are asserting claims under Section 10(b) of the Securities Exchange Act of 1934, 15

U.S.C. 78j (the "Exchange Act") and Rule 10b–5 promulgated thereunder; Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q (the "1933 Act"); and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1962(c) (1982) ("RICO"). The plaintiffs are also asserting claims of common law fraud, breach of fiduciary duty, breach of contract, and negligence.[1]

The defendants, Becker Paribas Incorporated, Becker Holdings Inc., Becker Paribas Holdings Inc., and Paribas Corporation ("Becker"), and Alvin R. Corwin ("Corwin"), have filed a motion, pursuant to Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 3, 4 (1970), to compel arbitration of all claims, and to stay this action pending arbitration. The plaintiffs have moved to amend their complaint to assert a claim under Section 12(2) of the 1933 Act, 15 U.S.C. § 77*l*(2) ("§ 12(2)").

For the reasons set forth below, the defendants' motion to compel arbitration is granted, and this action is stayed pending arbitration. The plaintiffs' motion to amend their complaint is granted.

## BACKGROUND

The plaintiffs are former brokerage customers of Becker and from 1978 to 1983 they maintained a number of securities accounts with Becker. By June of 1982, the plaintiffs had placed approximately $13.5 million into their accounts with Becker. The plaintiffs had an equity position of approximately $4 million when they closed the account in September of 1983. Both sides agree that the plaintiffs suffered a substantial loss.

The plaintiffs claim that their losses were a result of the defendants' miscon-

duct. Specifically, the amended complaint alleges that the defendants: (1) offered and sold securities to the plaintiffs by means of misrepresentations and/or omissions of material facts; (2) engaged in unauthorized transactions; (3) recommended and purchased certain investments that were not suitable in light of the plaintiffs' stated investment goals; (4) charged the plaintiffs excessive commissions; and (5) forced the plaintiffs to incur interest expenses at unreasonably high rates. The plaintiffs are seeking compensatory damages of $17,500,000, and punitive damages of $10,500,000.

The defendants seek to compel arbitration based on the provisions contained in two written agreements, signed by the plaintiffs, which were entitled "Customer Margin Agreement/Loan Consent" ("Customer Consents").[2] The Customer Consents each contained a provision that states in relevant part:

> It is agreed that any controversy between us arising out of [Becker's] business or this agreement shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange or pursuant to the Code of Arbitration of the National Association of Securities Dealers, as the undersigned may elect.

Relying on this language, and the Supreme Court's recent decision in *Dean Witter Reynolds, Inc. v. Byrd*, —— U.S. ——, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the defendants filed a motion to compel arbitration pursuant to the federal Arbitration Act.

## DISCUSSION

The Arbitration Act reversed centuries of judicial hostility to arbitration

1. Although the plaintiffs' first amended complaint does not allege a claim under § 17(a) or claims for breach of contract and negligence, the plaintiffs have moved pursuant to Fed.R. Civ.P. ("Rule") 15(a) for permission to amend their complaint to add those claims. Because the defendants have consented to the plaintiffs' amending the complaint to add these claims, the Court grants the plaintiffs' motion to add the claims, and for the purposes of this motion

treats the complaint as being amended to that extent.

2. The plaintiffs opened five margin accounts with Becker. Herbert Cohen was the registered representative who handled these accounts. Mr. Cohen was voluntarily dismissed from the action with prejudice. The defendant Corwin was the head of Becker's retail bond department.

agreements. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510–11, 94 S.Ct. 2449, 2452–53, 41 L.Ed.2d 270 (1974). The Act was designed to avoid the expense and delays involved in litigation, and to give arbitration agreements the same validity as other contracts. *Id.* (citing H.R.Rep. No. 96, 68th Cong., 1st Sess. 1, 2 (1924)); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, —— U.S. ——, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985).

In considering a motion to compel arbitration, the court must determine (1) whether there is an agreement to arbitrate; (2) whether the claims involved are arbitrable; and (3) whether the right to arbitrate has been waived. *See Janmort Leasing, Inc. v. Econo-Car Int'l, Inc.*, 475 F.Supp. 1282, 1288 (E.D.N.Y.1979). In the case at bar, the plaintiffs first argue that the arbitration agreements are invalid because the plaintiffs signed the Customer Consents without reading or understanding them. Second, the plaintiffs argue that the claims brought under § 10(b), § 17(a), and the RICO statute are non-arbitrable. Finally, the plaintiffs argue that the defendants waived their right to arbitrate by taking actions that were inconsistent with that right. For the reasons set forth below, the Court rejects each of these arguments, and concludes that arbitration is appropriate.

## I. *Validity of the Arbitration Agreement*

The plaintiffs argue that they were fraudulently induced to sign the Customer Consents. The plaintiffs claim that they signed the Consents without understanding the significance of the arbitration agree-

ments contained therein, and the Consents are therefore invalid.

The law in this area was clearly established by *Prima Paint Corp v. Flood and Conklin Mfg. Co.*, 388 U.S. 395, 402–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967). In that case, the Supreme Court held that when a contract contains an arbitration clause, a claim of fraudulent inducement concerning the contract as a whole should be decided by an arbitrator. The court will become involved only if there is a specific allegation that the arbitration clause itself, standing apart from the overall agreement, was induced by fraud. *Id.* at 402–04, 87 S.Ct. at 1805–06. *See also McMahon v. Shearson/American Express, Inc.*, 618 F.Supp. 384, 387 (S.D.N.Y.1985); *Jarvis v. Dean Witter Reynolds, Inc.*, 614 F.Supp. 1146, 1149 (D.Vt.1985). Claims concerning duress, unconscionability, coercion, or confusion in signing should be determined by an arbitrator because those issues go to the formation of the contract. *See Merrill Lynch, Pierce, Fenner & Smith v. Haydu*, 637 F.2d 391, 398 (5th Cir.1981).

In the case at bar, the plaintiffs are not claiming that the arbitration agreements were fraudulently induced, but rather that the Customer Consents were obtained by fraud because the plaintiffs did not understand or agree to the provisions contained therein. Since the claim of fraud is not directed at the arbitration clause itself, the issue of fraudulent inducement as to the Customer Consents is an issue for the arbitrator to decide.[3]

---

**3.** The plaintiffs also argue that the arbitration agreements should not be enforced because the Customer Consents are adhesion contracts and are therefore invalid. The plaintiffs further contend that by signing the Consents, the plaintiffs unknowingly waived their "fundamental Constitutional right of trial by jury." The Court finds these arguments unpersuasive.

There is no evidence that the Customer Consents are, in fact, adhesion contracts. There is nothing inherently unfair or oppressive about arbitration clauses. *See Surman v. Merrill Lynch, Pierce, Fenner & Smith*, 733 F.2d 59, 61

n. 1 (8th Cir.1984); *Finkle and Ross v. A.G. Becker Paribas*, 85 Civ. 1858 (S.D.N.Y. Dec. 2, 1985). Absent a showing of fraud or misconduct, it is conclusively presumed that an individual who signs a contract knows its contents and assents to them. *See Fustok v. Conticommodity Services, Inc.*, 577 F.Supp. 852, 856 (S.D.N.Y.1984). Because the plaintiffs have not adduced any evidence showing unfairness or unconscionability, the Court rejects the argument that the Customer Consents constituted adhesion contracts.

## II. *Arbitrability of Plaintiffs' Claims*

The plaintiffs argue that their claims under § 10(b) of the Exchange Act, § 17(a) of the 1933 Act, and their civil RICO claims are non-arbitrable. For the reasons set forth below, the Court holds that all of these claims are suitable for arbitration.

### A. *Section 10(b) of the Exchange Act*

In the landmark case of *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Supreme Court held that an agreement to arbitrate claims arising under § 12(2) of the 1933 Act is unenforceable. Although the decision in *Wilko* concerned the 1933 Act, numerous courts have extended the *Wilko* holding to claims brought under the Exchange Act. *See e.g., Delancie v. Birr, Wilson & Co.*, 648 F.2d 1255, 1257–59 (9th Cir.1981); *Sibley v. Tandy Corp.*, 543 F.2d 540, 543 and n. 3 (5th Cir.1976), *cert. denied*, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977); *Ayres v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 538 F.2d 532, 536–37 (3d Cir.), *cert. denied*, 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 619 (1976); *Greater Continental Corp. v. Schechter*, 422 F.2d 1100, 1103 (2d Cir.1970); *Starkman v. Seroussi*, 377 F.Supp. 518, 522 (S.D.N.Y.1974). Clearly the plaintiffs' 10(b) claims are non-arbitrable if the rationale of the above cases is correct.

In *Scherk v. Alberto Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), however, the Supreme Court questioned whether the *Wilko* doctrine is applicable to claims arising under § 10(b) of the Exchange Act. *Id.* at 513–14, 94 S.Ct. at 2454–55. The Court noted that there are important distinctions between the 1933 Act and the Exchange Act. The Court explained that § 12(2) of the 1933 Act provides the "special right" of a private judicial remedy for civil liability, whereas the Exchange Act does not provide such a right. The right that arises under § 12(2) is an express Congressionally-created right, while the right under § 10(b) is an implied one. *Id.* 513–14, 94 S.Ct. at 2554–55. In addition, the Exchange Act does not include the broad jurisdictional provisions that the 1933 Act does. Thus, the Court expressed reservations about extending the *Wilko* doctrine to claims arising under the 1934 Act, absent the special right or the jurisdictional provisions which the *Wilko* Court found to be significant. *Id.*[4]

In *Byrd*, 105 S.Ct. 1238, the Supreme Court reiterated the question of whether the *Wilko* doctrine applies to claims arising under the Exchange Act. *Id.* at 1240 n. 1. The Court did not decide the question, however, since the issue had not been raised in the district court. In a concurring opinion, Justice White stated that "the question remains open and the contrary holdings of the lower courts must be viewed with some doubt." *Id.* at 1244. He compared the provisions of the 1933 Act and the Exchange Act, and concluded that *"Wilko's* reasoning cannot be mechanically transplanted to the 1934 Act."[5] *Id.*

Since the decision in *Byrd* was rendered, a growing number of district courts have concluded that the Arbitration Act should be applied to claims arising under § 10(b).

---

**4.** *Scherk* is the only case in which the Supreme Court has decided the issue of whether § 10(b) claims can be arbitrated. The Court concluded that because of the international context of the transaction, and the important policies concerning international transactions, the parties' claims under § 10(b) were subject to arbitration.

**5.** Justice White explained that the factors underlying the Court's decision in *Wilko* are absent where a claim arises under the 1934 Act:

While § 29 of [the Exchange Act] is equivalent to § 14 of the 1933 Act, counterparts of the other two provisions are imperfect or absent altogether. Jurisdiction under the 1934 Act is narrower, being restricted to the federal courts.... More important, the cause of action under § 10(b) and Rule 10b–5, involved here, is implied rather than express.... [T]he phrase "waive compliance with any provision of this chapter" ... is thus literally inapplicable. Moreover, *Wilko's* solicitude for the federal cause of action—the "special right" established by Congress ...—is not necessarily appropriate where the cause of action is judicially implied and not so different from the common law action.

105 S.Ct. at 1244 (footnote omitted).

*See Finkle and Ross v. A.G. Becker Paribas,* 622 F.Supp. 1505 (S.D.N.Y.1985); *McMahon v. Shearson/American Express,* 618 F.Supp. at 386–89; *Ross v. Mathis,* 624 F.Supp. 110 [Current] Fed.Sec.L.Rep. (CCH) ¶ 92,343 (N.D.Ga. Sept. 11, 1985); *Jarvis v. Dean Witter Reynolds,* 614 F.Supp. at 1151–52; *Finn v. Davis,* 610 F.Supp. 1079 (S.D.Fla.1985); *Raiford v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. 83–685A (N.D.Ga. May 16, 1985); *Mann v. Foster & Marshall,* No. C84–925D (W.D.Wash. May 24, 1985); *Niven v. Dean Witter Reynolds, Inc.,* [Current] Fed.Sec. L.Rep. (CCH) ¶ 92,059 (M.D.Fla. March 28, 1985).[6]

■ There is a strong national policy favoring arbitration. *See Mitsubishi,* 105 S.Ct. at 3354; *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–43, 74 L.Ed.2d 765 (1983). Arbitration provides a prompt and efficient method of resolving disputes, without the expense, delays or complications that are inherent in litigation.[7] *See Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 856, 79 L.Ed.2d 1 (1984).

In a dissenting opinion in *Wilko,* Justice Frankfurter concluded that claims arising under the 1933 Act should be arbitrated because he believed the arbitration system would effectively protect the *rights* to which an individual is entitled under the 1933 Act. 436 U.S. at 439, 74 S.Ct. at 189. The majority did not agree. The majority pointed out that claims arising under § 12(2) would require subjective determinations concerning the defendant's knowledge and intent, and legal determinations

concerning statutory requirements. *Id.* at 436, 74 S.Ct. at 187. The Court concluded that such determinations must be made by a judge, rather than by an arbitrator, in order to insure that the protective provisions of the 1933 Act are effective. *Id.* at 437, 74 S.Ct. at 187.

Arbitration procedures, however, have become increasingly sophisticated since *Wilko* was decided, and the number of securities disputes being channeled into arbitration has risen significantly. *See* Katsoris, *Arbitration of a Public Securities Dispute,* 53 Fordham L.Rev. 279 (1984) ("Katsoris, *Arbitration*").[8]

A carefully developed structure has been established by the securities industry for arbitrating disputes, and the arbitrators available to consider disputes are generally knowledgeable individuals who have had experience working with the federal securities laws. *Id.* at 283–87.[9] The Uniform Code of Arbitration was adopted by participating Security Regulatory Organizations during 1979–1980 and almost 5,000 arbitration cases were filed with those organizations by 1984. *Id.* at 284. Moreover, the parties ordinarily have the opportunity to challenge the selection of the arbitrators by exercising peremptory challenges or challenges for cause.[10]

Various Security Regulatory Organizations, including the New York Stock Exchange, Inc., and the National Association of Securities Dealers, Inc., provide arbitration forums for resolving disputes involving members of those organizations and their public customers.[11] The rules govern-

---

**6.** There have also been a significant number of cases holding that § 10(b) claims are non-arbitrable. *See, e.g., Weizman v. Adornato,* 84 Civ. 3603 (E.D.N.Y. April 24, 1985); *Webb v. R. Rowland & Co. Inc.,* 613 F.Supp. 1123, 1124 (E.D.Mo. 1985).

**7.** Arbitration also promotes judicial efficiency in general by reducing the courts' caseload.

**8.** *See generally* Krause, *Securities Litigation: The Unsolved Problem of Predispute Arbitration Agreements for Pendent Claims,* 29 DePaul L.Rev. 693 (1980); *see also* 71 A.B.A.J. at 79 (The American Arbitration Association main-

tains a list of arbitrators who have been selected for their knowledge and expertise.).

**9.** *See also,* 71 A.B.A.J. at 79 (The American Arbitration Association maintains a list of arbitrators who have been selected for their knowledge and expertise.).

**10.** *See* Uniform Code of Arbitration Procedure of the National Association of Securities Dealers, Inc. ("N.A.S.D."), Manual (CCH) §§ 8–10.

**11.** *See* Constitution of the New York Stock Exchange, Inc., Art. VIII, 2 N.Y.S.E. Guide (CCH) ¶¶ 1351–1357; Rules 600–633 of the New York

ing the arbitration procedure have been approved by the Securities Exchange Commission, *see* Exchange Act Release No. 16390, S.E.C. (Nov. 30, 1979) 18 S.E.C. Docket 1197 (1979), and the Commission retains jurisdiction to correct any perceived abuses or unfairness in the rules. *See* 15 U.S.C. § 78s.

 Relying on the majority's reasoning in *Wilko*, the plaintiffs in the instant case argue that the determination of their claims arising under § 10(b) should not be entrusted to arbitration, because arbitration will not adequately safeguard their rights. The Court rejects this argument given the arbitration procedures that presently exist.

 Moreover, the purpose of the Arbitration Act was to give arbitration agreements the same force and effect as other contracts, where, as here, the parties expressly agree to submit disputes to arbitration. Courts have indicated grave doubts about the propriety of overriding the parties' express agreement. *See e.g., McMahon v. Shearson/American Express, Inc.,* 618 F.Supp. at 388; *Niven v. Dean Witter Reynolds, Inc.,* No. 84–1594 Civ.–T–10, at 5 (M.D.Fla. March 28, 1985); *see also, Byrd,* 105 S.Ct. at 1242 ("The legislative history of the Act establishes that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate.").

 Furthermore, the Arbitration Act does not mandate arbitration of all claims;

absent an agreement to arbitrate, the Arbitration Act does not apply, and the parties are entitled to a judicial remedy. Thus, cases involving the general public would ordinarily be litigated in the courts because the parties would not have entered into an arbitration agreement. If, for example, there had been a large scale fraud or there had been industry-wide practices which impacted on the general public, the case would, no doubt, be conducted in court.[12]

For the reasons set forth above, the motion to compel arbitration of the plaintiff's § 10(b) claims is granted.

**B. *Section 17(a) of the 1933 Act***

 The plaintiffs are also asserting a claim under § 17(a) of the 1933 Act. The Second Circuit has noted that § 17(a) and § 10(b) are virtually identical. *See Kirshner v. United States,* 603 F.2d 234, 241 (2d Cir.1978), *cert. denied, sub nom., Goldberg v. Kirshner,* 444 U.S. 995, 100 S.Ct. 531, 62 L.Ed.2d 426 (1979).[13] In light of the provisions' similarity, and the Court's determination that the plaintiffs' 10(b) claims are arbitrable, the Court sees no reason to prohibit arbitration of the plaintiffs' § 17(a) claims.

**C. *RICO***

 As previously discussed, there is a strong policy in favor of arbitration, and courts are reluctant to disregard the parties' express agreement to arbitrate. In light of this, and absent any indication that

---

Stock Exchange, Inc., *id.* ¶¶ 2600–2633; Uniform Code of Arbitration Procedure of N.A.S.D., Manual (CCH) ¶¶ 3701–3744. *See generally* Katsoris, *Arbitration,* 53 Fordham L.Rev. 279.

Although the plaintiffs do not address the issue, the defendants indicate that the arbitration forums provided by the New York Stock Exchange, and N.A.S.D., are both available to the plaintiffs. *See* Defendants' Memorandum in Support of Defendants' Motion to Compel Arbitration, at 17.

**12.** In *Allegaert v. Perot,* 548 F.2d 432 (2d Cir. 1977), *cert. denied,* 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977), and *Greater Continental Corp. v. Schechter,* 422 F.2d 1100 (2d Cir.1970), the Second Circuit concluded that it was not appropriate to compel arbitration of securities

claims arising under the Exchange Act because of the significant questions of public policy and public interest arising from those claims. *Allegaert* involved a claim brought by a bankruptcy trustee on behalf of hundreds of creditors, and the court concluded that arbitration was inappropriate in light of the strong public interest existing in that case. 548 F.2d at 436. *Greater Continental* also involved an industry-wide practice. 422 F.2d at 1103. That is very different from the situation in the case at bar.

**13.** Although there is some doubt as to whether there is a private right of action under § 17(a), *see Yoder v. Orthomolecular Nutrition Inst.,* 751 F.2d 555, 559 n. 3 (2d Cir.1985), the Court does not reach that issue.

Congress intended to prohibit the arbitration of RICO claims, the Court concludes that RICO claims are arbitrable. *See Ross v. Mathis,* Fed.Sec.L.Rep. at ¶ 92,247; *West v. Drexel Burnham Lambert, Inc.,* [Current] Fed.Sec.L.Rep. ¶ 92,327 (W.D.Wash. August 15, 1985); *Jacobsen v. Merrill Lynch,* No. 84-1844 (W.D.Pa.1985); *Development Bank of the Philippines v. Chemtex Fibers Inc.,* 617 F.Supp. 55, 56 (S.D.N. Y.1985).

■ Arbitration agreements should be enforced unless Congress indicates that a waiver of judicial remedies is prohibited. *See Mitsubishi,* 105 S.Ct. at 3355. RICO does not include an anti-waiver provision, and there is no indication that Congress intended to exempt civil RICO claims from the dictates of the Arbitration Act.

■ The parties here agreed to arbitrate any claims arising from their transactions, and the plaintiffs' RICO claims arose from those transactions. If arbitration of such claims is to be prohibited, it must be done by Congress, not the Court. *See Finn v. Davis,* 610 F.Supp. 1079, 1083 (S.D. Fla.1985) ("[T]his court will not fashion another exception to the Arbitration Act.").

The plaintiff's argument that RICO claims are nonarbitrable is based on *S.A. Mineracao da Trinadade-Samitri v. Utah Int'l, Inc.,* 576 F.Supp. 566 (S.D.N.Y.1983), aff'd, 745 F.2d 190 (2d Cir.1984).[14] In *Samitri,* the court held that RICO claims are not arbitrable because, like the antitrust laws, the resolution of civil RICO claims may impact not only on the individuals involved, but also on society in general. 576 F.Supp. at 575. The court reasoned that because RICO involves a substantial public interest—that is, the eradication of organized crime—Congress did not intend an arbitrator to decide claims brought under RICO. *Id.* at 574–76. Congress, however, did not expressly indicate an intent to exclude RICO claims from the provisions of the Arbitration Act.

The continued viability of *Samitri* is doubtful in light of subsequent cases. In *Mitsubishi,* 105 S.Ct. 3346, the Supreme Court held that antitrust claims which arise in an international context are arbitrable. Relying on *Mitsubishi,* Judge Weinfeld recently held in *Chemtex Fiber,* 617 F.Supp. 55, that RICO claims arising in the context of the international commercial system are also arbitrable. The court reiterated that the Federal Arbitration Act establishes a strong preference for arbitration, and noted that "*Samitri* is substantially weakened by the recent dissent of the Supreme Court in *Mitsubishi* [.]" *Id.* at 56.

Ruling from the bench in a subsequent case, *Wall Street Assoc. v. Becker Paribas,* 85 Civ. 4649 (S.D.N.Y. Sept. 19, 1985), the court held that RICO claims can be arbitrated even though the context is domestic rather than international. The court relied on *Mitsubishi* and *Chemtex Fiber,* and noted the strong trend towards enforcing arbitration agreements. The court rejected the argument that RICO is too complex or too embryonic in its development to be arbitrated.

The majority of civil RICO claims do not impact on the general society or involve vital national interests, in the manner that the *Samitri* court anticipated. *See Sedima, S.P.R.L. v. Imrex Co.,* —— U.S. —— at ——, 105 S.Ct. 3275, at 3286, 87 L.Ed.2d 346. Indeed, it appears that most civil RICO claims are being asserted against respected and legitimate enterprises, "rather than the archetypal, intimidating mobster." *Id.* In its private civil version, RICO is not generally being used to eradicate organized crime as it was originally designed to do. *Id.* "Because of the breadth of RICO's language, it has essentially become a federal business tort statute." *West v. Drexel Burnham Lambert,* Fed.Sec.L.Rep. at ¶ 92,328. Given the nature of the civil RICO claims being asserted, arbitration presents an appropriate method of resolution.

**14.** On appeal, the Second Circuit did not address the question of the arbitrability of RICO claims.

For the reasons set forth above, the Court directs that the plaintiff's RICO claims be submitted to arbitration.

### D. *Common Law Claims*

■ In light of the Supreme Court's recent decision in *Byrd,* 105 S.Ct. 1238, the plaintiffs' common law claims are clearly arbitrable. In *Byrd,* the Supreme Court rejected the intertwining doctrine, and held that the Arbitration Act requires a district court to compel arbitration of pendent state claims if one of the parties files a motion to compel. 105 S.Ct. 1244. Thus, in the case at bar, the plaintiff's pendent state claims must be arbitrated.

### E. *Claims Against Defendant Corwin*

■ The plaintiffs argue that the claims against Corwin, the head of Becker's Bond Department, should not be arbitrated because Corwin was not a party to the arbitration agreement. This argument has no merit.

The agreement provides that any controversy arising out of the plaintiffs' accounts will be settled by arbitration. All of the plaintiffs' allegations against Corwin arise out of his actions as Becker's employee in connection with the plaintiffs' accounts. Thus, the plaintiffs' claims against Corwin are based on a controversy arising out of the plaintiffs' accounts, and as such, those claims fall squarely within the scope of the arbitration agreement. *See Ross v. Mathis,* [Current] Fed.Sec.L.Rep. (CCH) ¶ 92,-246, ¶ 92,343 (N.D.Ga. Sept. 11, 1985).

Having determined that the claims discussed above are arbitrable, the Court now turns to the question of whether the defendants waived their right to arbitration.

### III. *Waiver*

The plaintiffs argue that the actions taken by the defendants during the course of the instant lawsuit were inconsistent with the right to arbitrate, and constituted a waiver of that right. The plaintiffs contend that the defendants waived their right to arbitration (1) by sending a letter to the plaintiffs requesting that they consent to service of process for jurisdictional purposes; (2) by participating in pretrial discovery procedures; and (3) by failing to assert the right to arbitrate until nine months after commencing the lawsuit. The Court concludes that none of these actions constitute a waiver of the right to arbitrate.

■ There is an overriding federal policy favoring enforcement of arbitration agreements, and waiver is not to be lightly inferred. *See Midwest Window Systems, Inc. v. Amcor Indus., Inc.,* 630 F.2d 535, 536 (7th Cir.1980); *Gavlik Constr. Co. v. H.F. Campbell Co.,* 526 F.2d 777, 783 (3d Cir.1975); *Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2d Cir.1968). The party seeking to prove waiver has a heavy burden. *See Sweater Bee By Banff, Ltd v. Manhattan Inds., Inc.,* 754 F.2d 457, 466 (2d Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985); *Martin Marietta Aluminum, Inc. v. General Elec. Co.,* 586 F.2d 143, 146 (9th Cir.1978).

■ Any doubts concerning whether an issue is arbitrable should be resolved in favor of arbitration, including allegations of waiver. *See Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. at 941–42. Furthermore, the party alleging waiver must show substantial prejudice in order to prevail. *See Sweater Bee,* 754 F.2d at 463; *Gavlik Constr. Co.,* 526 F.2d at 783; *Carcich,* 389 F.2d at 696; *American Broadcasting Cos., Inc. v. Ali,* 434 F.Supp. 1108, 1112 (S.D.N.Y.), *aff'd mem.,* 573 F.2d 1287 (2nd Cir. 1977); *Shinto Shipping Co. Ltd. v. Fibrex & Shipping Co.,* 425 F.Supp. 1088, 1091 (N.D.Cal.1976), *aff'd,* 572 F.2d 1328 (9th Cir.1978).

■ In September, 1981, the defendants in the case at bar requested that the plaintiffs sign a Letter of Authorization, which the plaintiffs did. The Letter of Authorization provided in relevant part that the plaintiffs would "consent to service of process in their individual capacities ... in any Federal or state court[.]" The plaintiffs argue that by having this letter signed, the

defendants waived the right to arbitrate. The Court disagrees.

Requiring the plaintiffs to submit to the jurisdiction of a competent court is not inconsistent with the defense of arbitration and the Letter of Authorization does not provide unambiguous evidence that the defendants intended to relinquish their right to arbitrate. *See Hart v. Orion Ins. Co.,* 453 F.2d 1358, 1360 (10th Cir.1971); *China Union Lines v. American Marine Underwriters, Inc.,* 458 F.Supp. 132, 136 n. 13 (S.D.N.Y.1978). The consent to jurisdiction merely enables the defendants to enforce their rights in case of a dispute, including their right to arbitrate.

■ The plaintiffs also argue that the defendants waived their right to arbitrate by failing to assert the defense of arbitration for a period of approximately nine months, and by participating in discovery procedures. Delay in seeking arbitration, however, does not constitute a waiver of the right of arbitration, absent prejudice to the opposing party. *Sweater Bee,* 754 F.2d at 463; *Rush v. Oppenheimer & Co.,* 606 F.Supp. 300, 301 (S.D.N.Y. 1985). Nor does the mere participation in a lawsuit constitute a waiver without some resultant prejudice to the opposing party. *See Lubrizol Int'l S.A. v. M/V Stolt Argobay,* 562 F.Supp. 565, 573 (S.D.N.Y.1982); *Masthead Mac Drilling Corp. v. Fleck,* 549 F.Supp. 854, 856 (S.D.N.Y.1982); *Clar Prod. Ltd. v. Isram Motion Pictures,* 529 F.Supp. 381, 383 (S.D.N.Y.1982). There is no evidence in the instant case that the plaintiffs have been prejudiced by the defendants' participation in the action or by their delay in asserting the defense of arbitration. Although the plaintiffs contend that discovery has resulted in "a great deal of time and expense," [15] there has been no indication that the expenses incurred were unusually burdensome.[16] *See Masthead Mac Drilling,* 549 F.Supp. at 856.

■ Furthermore, prior to *Byrd,* 105 S.Ct. 1245, the defendants had no reasonable basis for moving to compel arbitration. Until that decision, courts had generally assumed that claims under § 10(b) and § 17(a) were non-arbitrable in light of the *Wilko* doctrine.[17] After *Byrd* was decided, the defendants acted expeditiously in moving to compel arbitration. In addition, the plaintiffs did not assert their RICO claims until after the Supreme Court's decision in *Sedima, S.P.L.R. v. Imrex Co., Inc.,* — U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), so that the defendants could not have requested arbitration of those claims. Thus, the defendants' decision not to assert their arbitration defense, prior to this motion, was a reasonable one.

The defendants were justified in participating in discovery for the same reasons. They did so, based on the assumption that the plaintiffs' claims were non-arbitrable and would be litigated. For the reasons discussed above, the Court concludes that the defendants did not waive their right to arbitration.

## IV. *Amending the Complaint*

The plaintiffs move pursuant to Rule 15(a) for permission to amend the complaint to add a claim under § 12(2) of the 1933 Act. The plaintiffs' motion is granted.

■ Rule 15(a) states that leave to amend a complaint "shall be freely given when justice so requires." Courts have consistently applied the pleading rules liberally, rather than narrowly. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *State Teacher's Retirement v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981); *S.S. Silberblatt, Inc. v. East Harlem Pilot Block,* 608 F.2d 28, 42

---

**15.** *See* Plaintiff's Memorandum of Law at 21.

**16.** It should also be noted that the rules concerning discovery in arbitration procedures are flexible. Even if the plaintiffs' claims had been submitted to arbitration at once, the plaintiffs may very well have been required to participate in the same type of discovery that has taken place to date.

**17.** *See infra* discussion concerning arbitrability of § 10(b) claims.

(2d Cir.1979). In determining whether an amendment is justified, the court should focus on the resultant prejudice to the defendant. *See Middle Atlantic Util. Co. v. S.M.W. Dev. Corp.*, 392 F.2d 380, 384 (2d Cir.1968).

The defendants argue that the plaintiffs' request to amend should be denied because adding the § 12(2) claim will delay the action and prevent its speedy resolution. Although the § 12(2) claim may lengthen the proceedings, trial of the issues will not be unduly delayed. This is not a case where the amendment came on the eve of trial and would result in new problems of proof. *See e.g., Bradick v. Israel*, 377 F.2d 262 (2d Cir.), *cert. denied*, 389 U.S. 858, 88 S.Ct. 101, 19 L.Ed.2d 124 (1967). There has been no showing that the amendment would unduly prejudice the defendants, and the plaintiffs are entitled to have the opportunity to present the merits of their claims.

The plaintiffs, however, can only assert those claims that are timely under the applicable statute of limitations, Section 13 of the 1933 Act, 15 U.S.C. § 77m. Section 13 provides in relevant part:

> No action shall be maintained to enforce any liability created under ... section 12(2) unless brought within one year after discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence.... In no event shall any such action be brought to enforce a liability created ... under section 12(2) more than three years after the sale.

Under Rule 15(c), the proposed amendment relates back to the date of the original complaint, since the § 12(2) claim arises out of the same facts as those alleged in the original complaint. The plaintiffs' accounts at Becker were closed in 1983, and the plaintiffs commenced this action in 1984, within one year after the accounts at issue here were closed. Thus, the one year requirement is satisfied.

Section 13 also requires that all § 12(2) claims be brought within three years of the sale of the relevant securities to the complaining party. *See In re Caesars Palace Securities Litigation*, 360 F.Supp. 366 (S.D.N.Y.1973). As previously noted, the amendment relates back to the original complaint, which was filed on August 16, 1984. Thus, applying the three year limitation, the plaintiff can only assert claims relating to securities purchased after August 16, 1981, three years prior to the date of the original complaint.

The final issue raised by the parties in terms of amending the complaint concerns the type of securities that were purchased for the plaintiffs' accounts. Section 3(a)(2) of the 1933 Act, 15 U.S.C. § 77c(a)(2), provides that all government securities are exempted from § 12(2) claims. It is undisputed that certain government securities were purchased by Becker for the plaintiffs' accounts, and that the plaintiffs cannot assert a § 12(2) claim in connection with those securities.

The purchase of those government securities, however, involved the use of repurchase agreements, and the plaintiffs contend that the repurchase agreements constitute securities, so that § 12(2) applies to those transactions. The Court does not reach that issue at this time.

Thus, the plaintiff may amend the complaint to assert a § 12(2) claim in relation to securities purchased after August 16, 1981. Although the Court is permitting the amendment, the Court is not ruling on the issue of whether repurchase agreements constitute securities for the purposes of § 12(2).

The action before the Court is stayed pending the completion of the arbitration. *See Home Life Ins. Co. v. Kaufman*, 547 F.Supp. 833, 835–36 (S.D.N.Y.1982); *Lawson Fabrics, Inc. v. Akzona, Inc.*, 355 F.Supp. 1146, 1151 (S.D.N.Y.), *aff'd* 486 F.2d 1394 (2d Cir.1973). Arbitration may well clarify and perhaps even simplify the issues that must be litigated. *See Janmort Leasing Co. v. Econo-Car Int'l, Inc.*, 475 F.Supp. 1282, 1293 (E.D.N.Y.1979). The action will be placed on the suspense

docket. Either party, however, may move to vacate the stay if arbitration is unduly delayed.

## CONCLUSION

The Court concludes that (1) there is an arbitration agreement; (2) the plaintiffs' claims under § 10(b), § 17(a), and RICO are all arbitrable; (3) the plaintiffs' common law claims are arbitrable; (4) the defendants have not waived their right to arbitration; and (5) the claims against the defendant Corwin are also subject to arbitration. Accordingly, the defendants' motion to compel arbitration is granted.

The plaintiffs' motion to amend the complaint is granted to the extent set forth above, and the action is stayed pending arbitration.

So Ordered.