**FIRST CITIZENS MUNICIPAL CORP. and Michael Siemer, Plaintiffs,**

v.

**PERSHING DIVISION OF DONALDSON, LUFKIN & JENRETTE SECURITIES CORP. and Mitchel, Schrieber & Watts, Inc., Defendants.**

Civ. A. No. C82–822A.

United States District Court, N. D. Georgia, Atlanta Division.

Sept. 20, 1982.

Gregory E. Stuhler, Atlanta, Ga., for plaintiffs.

Walter W. Driver, Jr., Atlanta, Ga., for Donaldson, Lufkin & Jenrette.

## ORDER

ROBERT H. HALL, District Judge.

Before this court is an action brought by First Citizens Municipal Corporation (hereinafter "First Citizens"), a corporate securities dealer, and Michael Siemer, the sole stockholder and Chairman of the Board of First Citizens. The underlying dispute involves the performance by defendant Pershing Division of Donaldson, Lufkin and Jenrette Securities Corporation (hereinafter "DLJ") of certain clearing and accounting services for First Citizens' securities transactions. DLJ contends that First Citizens is required to submit this dispute to arbitration by the terms of its contract with DLJ or, alternatively, by the terms of its prede-

cessor contract with defendant Mitchel, Schrieber and Watts, Inc. (hereinafter "MSW"). Accordingly, DLJ and MSW have filed a motion pursuant to Rule 12(b)(1), F.R.Civ.P., and 9 U.S.C. § 3, to stay these proceedings and compel arbitration. Jurisdiction is predicated upon 28 U.S.C. § 1332.

On November 25, 1980, First Citizens entered into a contract with MSW whereby MSW undertook to provide "clearing and accounting" services on behalf of First Citizens for First Citizens' securities customers. In November, 1981, DLJ agreed to assume MSW's business of clearing and executing securities transactions for other broker-dealers. In furtherance of this agreement, DLJ sent to each of MSW's broker-dealer customers, including First Citizens, a copy of its own "Fully Disclosed Clearing Agreement" (hereinafter the "DLJ Agreement"). This agreement set out the obligations of both parties to the contract, as well as the fee schedule pertaining to services to be performed by DLJ. The cover letter enclosed with the DLJ Agreement informed First Citizens that the agreement superseded First Citizens' prior agreement with MSW, and was to become effective on November 16, 1981. First Citizens was also asked to return a signed copy of the DLJ Agreement to DLJ. Although First Citizens did not comply with this request, subsequent to November 16, 1981, DLJ executed and cleared trades for First Citizens, and prepared and mailed out trade confirmations to First Citizens customers in accordance with the DLJ Agreement. First Citizens paid DLJ for these services in accordance with the fee schedule contained in the DLJ Agreement, which differed from the schedule in the previous MSW agreement. At no time prior to filing the instant suit did First Citizens object to the performance of these services by DLJ.

■ The plaintiff's original complaint articulates a variety of state law claims, including breach of contract, intentional interference with business relations, and wrongful withholding of funds, arising from DLJ's allegedly improper performance of its clearing and accounting duties. In addition, plaintiff has amended its complaint to assert violations of § 78j (b) of the 1934 Securities Act, § 77q (a)(3) of the 1933 Securities Act, and Rule 10(b)(5). Both the DLJ Agreement and the prior MSW Agreement contain a requirement that parties to the agreement submit to arbitration all disputes incapable of settlement. Defendants initially maintain that because plaintiff by its course of conduct adopted the DLJ Agreement, plaintiff must arbitrate the instant substantive dispute in accordance with that agreement. Alternatively, defendants argue that even if the plaintiff did not adopt the DLJ Agreement, plaintiff is bound to comply with the arbitration provision of the MSW Agreement. Finally, defendants contend that, independent of any contractual obligation to arbitrate, the parties are required to arbitrate under the Rules of the Municipal Securities Regulation Board.[1]

The plaintiffs' primary argument in opposition to the instant motion is that there is no enforceable contract between the parties and thus no obligation to arbitrate. In

---

1. It should be noted that defendants have failed to file answers to plaintiff's complaint, as required by Rule 7, F.R.Civ.P. The instant motion to stay judicial proceedings and compel arbitration, authorized by the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4, is outside the ambit of those Rule 12(b) motions that suffice as responsive pleadings in lieu of answers. The defendants have attempted to remedy this problem by also framing their motion pursuant to Rule 12(b)(1), F.R.Civ.P., asserting that because arbitration is required, this court lacks subject matter jurisdiction over the case. While expressing no opinion as to the correctness or wisdom of this strategy, this court acknowledges that federal courts have traditionally entertained certain types of pre-answer motions not specifically provided for in the Federal Rules. Wright and Miller have placed motions to stay proceedings pending arbitration into that category of motions "closely related to the management of the lawsuit ... involving matters of judicial administration." Wright and Miller, *Civil Practice and Procedure* § 1360 at 634. The court's "authority to hear these motions lies in the inherent power of a court to regulate actions pending before it." *Id.* This court will therefore consider the motions presently pending before it even though no answers have been filed.

addition, plaintiffs contend that because federal courts have exclusive jurisdiction over claims arising out of alleged violations of federal securities laws, this court should refuse to divest itself of this jurisdiction by ordering arbitration based on the concurrent presence in this case of arguably arbitrable disputes.

■■■ The fact that the validity of the contract as a whole has been challenged in this case does not prevent the application of the requirements and policies of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. American President Lines, Ltd. v. S. Woolman, Inc., 239 F.Supp. 833, 835 (S.D.N.Y.1964). As long as the arbitration clause itself comports with the statutory requirement that it be "a written provision in ... a contract evidencing a transaction involving commerce," 9 U.S.C. § 2, its enforceability will be determined by applicable federal law rather than by state arbitration law. Robert Lawrence Company v. Devonshire Fabrics, Inc., 271 F.2d 402, 410 (2nd Cir. 1959); AAACon Auto Transport v. Teafatiller, 334 F.Supp. 1042, 1043 (S.D.N.Y.1971). The contracts at issue here involve services provided by a Delaware corporation to a Georgia broker-dealer in connection with the sale of municipal securities. Undoubtedly these contracts evidence "a transaction involving commerce" within the meaning of the Federal Arbitration Act. See, Shearson, Hayden, Stone Inc. v. Liang, 493 F.Supp. 104 (N.D.Ill.1980); Robinson v. Bache & Co., 227 F.Supp. 456 (S.D.N.Y. 1964). Thus, federal rules of contract construction and interpretation will govern the disposition of the instant motion. Janmort Leasing, Inc. v. Econo-Car International, Inc., 475 F.Supp. 1282 (S.D.N.Y.1979).

■■■ Under the Federal Arbitration Act, the only questions to be decided by this court on a motion to compel are (1) whether an agreement to arbitrate was made, and (2) whether the party opposing arbitration has failed to comply with this agreement. 9 U.S.C. § 4. When, as here, a claim is made that there is no underlying contractual relationship between the parties at all, this court must resolve this issue first, be-

cause the existence of a contractual relationship is a necessary prerequisite to a finding that there was an agreement to arbitrate. In Re Kinoshita & Co., 287 F.2d 951, 953 (2nd Cir. 1961).

■■■ The initial issue to be decided by this court, then, is whether the parties are under any contractual obligation to arbitrate. Although there is an overriding federal policy favoring arbitration, Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 (2nd Cir. 1968), arbitration is a matter of contract, and a party cannot be required to submit a dispute to arbitration unless he has agreed to do so. Alabama Education Association v. Alabama Professional Staff Organization, 655 F.2d 607, 608 (5th Cir. 1981). Nonetheless, an agreement to arbitrate need not be signed by the party to be charged in order to be enforceable. AAA-Con Auto Transport Inc. v. Teafatiller, 334 F.Supp. 1042, 1043 (S.D.N.Y.1971). The Federal Arbitration Act "contains no built-in Statute of Frauds provision but merely requires that the arbitration provision itself be in writing. Ordinary contract principles determine who is bound by such written provisions and of course parties can become contractually bound absent their signatures." Fisser v. International Bank, 282 F.2d 231, 233 (2nd Cir. 1960). Like any other contract, a contract containing an arbitration provision may be binding on the parties based upon their course of conduct. See, e.g., Fox v. Merrill Lynch, 453 F.Supp. 561 (S.D.N.Y.1978).

■■■ Applying these principles to the instant case, it is clear that the DLJ Agreement was a binding contract between the parties. On its face, that agreement was effective on November 16, 1981, and First Citizens was informed that it superseded any prior agreements. The DLJ Agreement was substantially similar to the MSW Agreement which First Citizens had signed and had been operating under for a year prior to November 16, 1981. After November 16, 1981, DLJ provided services to First Citizens in accordance with the DLJ Agreement. First Citizens never objected to either the effective date of November 16 or

to any terms of the DLJ Agreement. First Citizens compensated DLJ for the services rendered pursuant to the DLJ Agreement in accordance with the rate schedule contained in that Agreement. In addition, plaintiffs' own complaint alleges, *inter alia,* a breach of contractual duties by DLJ. Moreover, the plaintiffs have nowhere in their pleadings rebutted defendants' allegations that plaintiffs acted in accordance with the terms of the DLJ Agreement subsequent to November 16, 1981. Clearly, therefore, the parties have adopted the DLJ Agreement by their course of conduct.

Plaintiffs argue, however, that even if a contractual relationship does exist between the parties, arbitration is impermissible because the federal courts have exclusive jurisdiction to hear claims arising under the 1933 Securities Act and the 1934 Securities Exchange Act. Plaintiffs contend that because their tort and contract claims are inextricably intertwined with their federal securities law claims, this court cannot divest itself of its jurisdiction over this case even in the face of arguably arbitrable claims. It is unnecessary for this court to rule on this argument, however, because this court finds that, given the parties' voluntary agreement to arbitrate as evidenced in the DLJ Agreement, arbitration is required pursuant to the Rules of the Municipal Securities Rulemaking Board (hereinafter "MSRB").

Both DLJ and First Citizens are municipal securities brokers or dealers as defined by the 1934 Securities Exchange Act, 15 U.S.C. §§ 78c(a)(4), (5). As such, they are subject to the provisions of the Arbitration Code established by the MSRB for persons involved in municipal securities transactions. (MSRB Rule G–35, Section 2). Section 28(b) of the 1934 Securities Exchange Act, 15 U.S.C. § 78bb(b) explicitly provides:

"Nothing in this title [15 U.S.C. § 78 *et seq.*] shall be construed to modify existing law with regard to the binding effect . . . (2) on any municipal securities broker of any action taken pursuant to a procedure established by the Municipal Securities Rulemaking Board to settle disputes between municipal securities dealers and municipal securities brokers."

The clearly intended purpose of this section was to "preserve for the stock exchanges a major self-regulatory role . . . which would be weakened significantly if the arbitration which the exchange deems desirable could be avoided at the will of any party claiming a securities law violation." *Tullis v. Kohlmeyer & Co.,* 551 F.2d 632, 638 (5th Cir. 1977). Preservation of this congressional policy is no less important or appropriate in the face of the "nonwaiver" provision of the 1933 and 1934 securities acts, 15 U.S.C. § 78cc(a), which plaintiff would construe to prevent contractually agreed-upon arbitration in the face of an asserted federal securities law violation. *Id.* Given the parties' agreement to arbitrate as evidenced in the DLJ Agreement, the explicit congressional authorization (see 15 U.S.C. § 78o–4(b)(2)(D)) for the MSRB arbitration requirements embodied in MSRB Rule G–35, Section 2, and the inapplicability of the "nonwaiver" provisions to the instant case, this court rejects plaintiff's contention that a stay of these proceedings is impermissible.

Accordingly, the defendant's motion for a stay of these proceedings and an order compelling the parties to arbitrate their grievances is GRANTED.