**N. DONALD & COMPANY, Plaintiff,**

v.

**AMERICAN UNITED ENERGY CORPO-RATION, Winfield Moon, Sr., Winfield Moon, Jr., Robert E. Jobes, Robert Hughes, Theoleme Moon, Ehrienfried Liedich, Mainstreet Securities, Inc., Edward Brown Securities, Inc., Western Capital & Securities, Inc., Keith Wanlass, Terry Bradley, Jerry Vamiden, Richard L. Anderson, Paul T. Bucy, Richard Carey, J.M. Stoof, Steve Leishman, John Katter and John Does, Defendants.**

Civ. A. No. 83–K–470.

United States District Court, D. Colorado.

May 10, 1984.

William R. Fishman, Fishman, Gersh & Bursiek, P.C., Denver, Colo., for plaintiff.

Arlan I. Preblud, Denver, Colo., and Adam M. Duncan, Salt Lake City, Utah, for Western Capital & Securities, Inc.

Arlan I. Preblud, Denver, Colo. and Wallace T. Boyack, Salt Lake City, Utah, for Main Street Securities, Inc.

David S. Yost, Denver, Colo., and Clark W. Sessions, Sessions & Moore, Salt Lake City, Utah, for American United Energy Corp., Winfield Moon, Sr., Winfield Moon, Jr., Robert E. Jobes, Robert Hughes, Theoleme Moon, Ehrienfried (Liedich [sic]) Liebich, Edward Brown Securities, Inc., Keith Wanlass, Terry Bradley, Jerry (Vamiden sic Amiden), Paul T. Bucy, J.M. Stoof, Steve Leishman and John Katter.

Dennis A. Graham, Lohf & Barnhill, P.C., Denver, Colo., for Richard C. Anderson.

Richard Carey, pro se.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

Plaintiff N. Donald & Company is a Colorado corporation with its principal place of business in Colorado. N. Donald is a broker/dealer in securities and is registered as such with the Securities and Exchange Commission and the National Association of Securities Dealers. Plaintiff filed this action in March of 1983 against various defendants including other broker/dealers, alleging violations of section 10(b) and rule 10b5 of the Securities and Exchange Act of 1934; sections 12(1) and (2) of the Securities Act of 1933; the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq. as well as violations of state securities and racketeering laws. Soon after N. Donald filed its complaint, two defendants Western Capital & Securities Inc. and Main Street Securities Inc. filed petitions asking me to compel plaintiff to arbitrate this matter with them as plaintiff and defendants are members of NASD. On July 6, 1983 I ordered the abatement of the present action pending the outcome of arbitration proceedings before NASD. Plaintiff has since appealed my order to the Tenth Circuit and has asked me to stay arbitration proceedings pending the outcome of the appeal. For the reasons stated in this order, I will not vacate the stay.

## I. THE WILKO MANDATE

Plaintiff first urges me to vacate my order because "if arbitration precedes litigation, over three quarters of the defendants, as well as the plaintiff, may be collaterally estopped from proving facts and establishing law which they have a right to do in front of a federal court." Memorandum Supporting Motion to Stay at 4. I am well aware that this court has exclusive jurisdiction to hear plaintiff's federal securities claims and that plaintiff has a right to seek relief in this court. Plaintiff has failed, however, to persuade me that this controversy falls within the mandate of *Wilko v. Swann*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953).

■ The Supreme Court in *Wilko v. Swann* held that a federal court is the proper forum for adjudicating claims under the federal securities laws. Thus, any prior agreement to arbitrate such claims is

unenforceable.[1] Exceptions to this rule are recognized, however, where the party seeking to avoid arbitration is a member of the New York Stock Exchange or another self-regulatory agency, *Tullis v. Kohlmeyer & Co.,* 551 F.2d 632 (5th Cir.1977) or where the securities claims stem from international commercial transactions. *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974); *S.A. Mineracao Da Trindade Samitri v. Utah International, Inc.,* 576 F.Supp. 566, 576 (S.D. N.Y.1983).

## II. THE 28(b) EXCEPTION TO WILKO

■ Plaintiff along with three defendants[2] are members of the National Association of Securities Dealers. NASD is a self-regulatory organization within the meaning of section 28(b) of the Securities Exchange Act of 1934 which states:

Nothing in this title shall be construed to modify existing law with regard to the binding effect (1) on any member of or participant in any self regulatory organization of any action taken by authorities of such organization to settle disputes between its members or participants, ...

15 U.S.C. § 78bb(b). Since plaintiff is a member of NASD and presently involved in a dispute with other members of NASD, the rule in *Wilko* does not prevent me from allowing this matter to be submitted to arbitration.

The Ninth Circuit in *O'Neel v. National Association of Securities Dealers,* 667 F.2d 804 (9th Cir.1982) reached the same conclusion. Mr. O'Neel, a former employee of a brokerage firm, filed an action in District Court seeking declaratory and injunctive relief from a third party claim against him in an arbitration proceeding. The district court held that plaintiff was bound to arbitrate the claim and that his subsequent resignation from NASD did not relieve him of that obligation. The Court of Appeals affirmed stating:

The principle that an arbitration provision incorporated by reference into an application to become an allied member of a stock exchange, is enforceable where there has been no fraud in the inducement, is so clearly established that no further discussion other than that set out above is necessary.

Plaintiff, an experienced businessman, having admittedly signed not one but two applications with the NASD is presumed to have read and understood the obligation he undertook. (citations omitted).

667 F.2d at 806.

Plaintiff N. Donald's obligation to arbitrate any dispute it may have with other members of NASD is succinctly stated in NASD's Code of Arbitration.[3] Plaintiff has not shown that it is unaware of this procedure or that it was fraudulently induced to join NASD. Therefore, I presume that N. Donald understands its obligation to arbitrate by virtue of its membership in NASD.

Policy considerations also convince me that arbitration is appropriate. The Second Circuit in *Axelrod v. Kordich, Victor & Neufeld,* 451 F.2d 838 (2d Cir.1971) dis-

---

1. "Arbitration agreements, voluntarily entered into by traders, which purported to waive their right to sue in federal court when disputes developed between them and their brokers are unenforceable." *Smokey Greenhaw Cotton v. Merrill Lynch, Etc.,* 720 F.2d 1446, 1448 (5th Cir.1983). *See also Sawyer v. Raymond James & Associates,* 642 F.2d 791 (5th Cir.1981); *Merrill Lynch, Pierce, Fenner & Smith v. Moore,* 590 F.2d 823 (10th Cir.1978); *Sibley v. Tandy Corp.,* 543 F.2d 540, *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977); *Cunningham v. Dean Witter Reynolds,* 550 F.Supp. 578 (E.D.Cal.1982); *Lane v. Dean Witter Reynolds,* 505 F.Supp. 610 (W.D.Okla.1980); *Machiavelli v. Shearson, Hammill & Co.,* 384 F.Supp. 21 (E.D.Cal.1974).

2. The three defendants include: Western Capital Securities Inc., Main Street Securities Inc. and Edward Brown Securities Inc. All are broker/dealers in securities and members of NASD.

3. "This Code of Arbitration Procedure is prescribed and adopted pursuant to Article IV, Section 2(b) of the By Laws of the National Association of Securities Dealers, Inc., (the Association) for the arbitration of any dispute, claim or controversy arising out of or in connection with the business of any member of the Association...." *See* NASD Manual: Code of Arbitration Procedure (CCH) ¶ 3701 (1982).

cussed the congressional purpose in giving securities exchanges the power to arbitrate disputes among their members:

> The 1934 Act established a statutory scheme of 'supervised self regulation' for stock exchanges. This involves control of exchange markets by requiring or permitting national securities exchanges to adopt rules governing their practices and procedures and the business conduct of the members and in each case imposes the responsibility for enforcement of these rules on the exchanges themselves. (citations omitted).

451 F.2d at 840. The Fifth Circuit also commented on this policy:

> Congress clearly intended to preserve for the stock exchange a major self-regulatory role. This policy which is the basis of § 28(b), would be weakened significantly if the arbitration which the exchange deems desirable could be avoided at the will of any party claiming a securities law violation.

*Tullis v. Kohlmeyer & Co.*, 551 F.2d 632, 638 (5th Cir.1977).

Organizations such as NASD should be allowed to enforce their arbitration provisions. Such is the congressional policy embodied in section 28(b) of the 1934 Act. It is inappropriate for this court to hinder this congressional scheme of self-regulation by staying arbitration proceedings.

Arbitration is also appropriate because plaintiff is a broker/dealer and not an investor. It is well recognized that the rule in *Wilko v. Swann* may only be invoked to protect small investors and not members of an exchange or an organization such as NASD. Judge Timbers in *Axelrod* discussed this limitation on *Wilko:*

> The Supreme Court [in *Wilko*] found that the non-waiver provision there involved was designed to protect investors. 346 U.S. at 431, 74 S.Ct. 182. Without such provision, financial houses might

escape statutory liability by taking advantage of the inferior bargaining position of customers. *But the legislative policy of protecting investors will not be thwarted by compelling an exchange member to arbitrate.* (emphasis added).

451 F.2d at 839; *Brown v. Gilligan Will & Co.*, 287 F.Supp. 766, 771–72 (S.D.N.Y. 1968) ("It was assumed that dealers could fend for themselves; it was the investing public that was in need of protection.") Since plaintiff is a member of NASD and a broker/dealer, it is not exempt from arbitrating securities law violations with other members of NASD.

Despite the authority supporting my order staying these proceedings, plaintiff contends that the Sixth Circuit's opinion in *First Heritage Corp. v. Prescott, Ball & Turben,* 710 F.2d 1205 (6 Cir.1983), [1983–1984 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 99.404 (1983) should persuade me to stay arbitration. I disagree.

The Sixth Circuit in *First Heritage* refused to stay a securities fraud action between two NASD members pending arbitration, even though both parties were governed by the NASD arbitration code. The court's refusal to stay proceedings is distinguishable, however, from the facts in this case. The Sixth Circuit refused to apply the 28(b) exception to *Wilko v. Swann* because the plaintiff-NASD member First Heritage Corporation, was representing numerous public investors in a class action suit against Prescott, Ball. Thus, the rule in *Wilko* which seeks to protect investors in unequal bargaining positions to brokers, precluded arbitration of the securities claims.

The situation here is totally dissimilar. N. Donald is not bringing a class action on behalf of defrauded investors. There is no indication that plaintiff's claims involve "wholesale fraud of institutional dimensions." [4] Obviously, I am not bound by the

---

**4.** *Allegaert v. Perot,* 548 F.2d 432, 437 (2d Cir.), *cert. denied,* 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977). The Second Circuit in *Allegaert* established a three part test to be applied when deciding whether to stay federal

securities litigation pending arbitration. The court should examine "the public interest in the dispute, the degree to which the nature of the evidence ma[kes] the judicial forum preferable to arbitration and the extent to which the agree-

decision in *First Heritage.* Moreover, I prefer to follow these decisions which uphold arbitration. *See O'Neel v. National Association of Securities Dealers,* 667 F.2d 804 (9th Cir.1982); *Tullis v. Kohlmeyer & Co.,* 551 F.2d 632 (5th Cir.1977); *Coenen v. R.W. Presspich & Co.,* 453 F.2d 1209 (2d Cir.), *cert. denied,* 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972); *Axelrod & Co. v. Kordich, Victor & Neufeld,* 451 F.2d 838 (2d Cir.1971); *In re the Revenue Properties Litigation Cases,* 451 F.2d 310 (1st Cir.1971); *Himebaugh v. Smith,* 476 F.Supp. 502 (C.D.Cal.1978); *Brown v. Gilligan Will & Co.,* 287 F.Supp. 766 (S.D.N.Y. 1968).

### III. CONCLUSION

Since I have determined that the federal securities claims are properly arbitrable, I need not discuss plaintiff's second argument that the pendent claims should not be arbitrated because they are intertwined with the federal claims.[5] *See Sibley v. Tandy Corp.,* 543 F.2d 540 (5th Cir. 1976). Plaintiff has also failed to demonstrate that it is entitled to a stay pursuant to Rule 62(c) F.R.Civ.P.[6] The motion to stay arbitration proceedings is therefore denied.

IT IS SO ORDERED.

---

ment to arbitrate was a product of free choice." 548 F.2d at 436. Plaintiff has not persuaded me that these considerations require me to stay arbitration.

5. "[W]hen it is impractical if not impossible to separate out nonarbitratable federal securities law claims from arbitrable contract claims, a court should deny arbitration in order to preserve its exclusive jurisdiction over the federal securities act claims." *Sibley,* 543 F.2d at 543.

6. The movant under Rule 62(c) must demonstrate likely success on the merits of the appeal; irreparable injury to itself and substantial harm to other interested parties if the stay is not granted; and that a stay would not harm the public interest. *See Marr v. Lyon,* 377 F.Supp. 1146, 1148 (W.D.Okla.1974). Plaintiff has not met the first requirement.