**Paul GOLDBERG, Plaintiff,**

v.

**DONALDSON, LUFKIN & JENRETTE SECURITIES CORPORATION, d/b/a Pershing Division of Donaldson, Lufkin & Jenrette Securities Corporation, Defendant.**

**Civ. A. No. 85–3573A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

June 23, 1986.

Fredric Chaiken, Robert J. Kaufman, Atlanta, Ga., for plaintiff.

Stephen J. Anderson, Atlanta, Ga., for defendant.

## ORDER OF COURT

HORACE T. WARD, District Judge.

Plaintiff in this action has alleged violations of the 1933 and 1934 Securities Acts and RICO, plus various constitutional, state statutory, and common law claims. Defendant has moved the court for an order staying this proceeding and compelling plaintiff to arbitrate the entire dispute. Defendant also seeks a protective order regarding discovery pleadings served by plaintiff.

**PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff, Paul Goldberg, is a former officer of First Citizens Municipal Corporation ("FCMC"), a now-defunct securities firm. Before it ceased operations in early 1983, FCMC held a membership in the National Association of Securities Dealers ("NASD"). Plaintiff has held a margin account with FCMC since late 1982. Defendant, the Pershing Division of Donaldson, Lufkin & Jenrette Securities Corporation ("DLJ"), is a securities clearing agency. During the time relevant to this action, DLJ performed clearing and execution services for FCMC.

The instant dispute centers around a balance in excess of $13,000 remaining in Goldberg's margin account. DLJ has refused to release the money to him. Apparently, DLJ first held the funds pending resolution of a dispute with FCMC; however, DLJ now claims a setoff right against money it alleges Goldberg's wife owes DLJ for a disputed transaction involving her separate account with FCMC. Goldberg's complaint alleges violations of section 17(a) of the 1933 Securities Act, 15 U.S.C. § 77q(a), sections 10(b) and 15(c)(1) of the 1934 Securities Exchange Act, 15 U.S.C. §§ 78j(b), 78o(c)(1), and SEC Rules 10(b)–5 and 15(c)(1)–2, 17 C.F.R. §§ 240.10b–5, 240.15c 1–2. He also alleges violations of the federal and Georgia RICO statutes, 18 U.S.C. § 1961 *et seq.* and O.C.G.A. § 16–14–1 *et seq.*, and the Georgia Fair Business Practices Act, O.C.G.A. § 10–1–390 *et seq.* In addition, Goldberg's complaint asserts claims for breach of contract, conversion, fraud, tortious interference with prospective economic advantage, breach of fiduciary duty, and violation of his due process rights under the federal and Georgia constitutions.

Defendant responded to this complaint by moving for an order staying these proceedings and compelling plaintiff to arbitrate.[1] DLJ contends Goldberg is required

---

**1.** Defendant has not filed an answer to plaintiff's complaint. Instead, defendant has framed its motion as one brought pursuant to Rule 12(b)(1), Fed.R.Civ.P., contending that the court

lacks subject matter jurisdiction because plaintiff's claims should be arbitrated. Although the court has concluded defendant's motion should be characterized as a motion made under 9

to arbitrate all claims asserted in this action pursuant to the NASD Code of Arbitration Procedure because he was an associate member of NASD when the dispute arose. DLJ also argues that Goldberg should be required to join in the pending arbitration between DLJ and his wife, Phyllis Goldberg, because he allegedly acted as her agent and joint tortfeasor with regard to her FCMC account.

Plaintiff contends he cannot be compelled to arbitrate this dispute because he is no longer an NASD member and because his claims are not arbitrable. Additionally, he contends, any arbitration requirement regarding his actions as an FCMC officer cannot be extended to cover a dispute over his individual account. Goldberg also objects to being joined in his wife's arbitration proceeding on the grounds that the disputes are unrelated and that one spouse's property cannot be applied to the debt of the other spouse.

## CONCLUSIONS OF LAW & DISCUSSION

### 1. *Should Goldberg Be Compelled to Arbitrate?*

DLJ brought its motion to stay proceedings and compel arbitration under Fed.R. Civ.P. 12(b)(1). However, defendant's legal arguments focus on its rights under the Federal Arbitration Act. Therefore, the court finds that defendant's motion shall be construed as a motion to stay proceedings pursuant to 9 U.S.C. § 3 and a corresponding motion to compel arbitration pursuant to 9 U.S.C. § 4.

▪ When considering a motion to stay proceedings and compel arbitration, the court must determine whether (a) a valid written agreement to arbitrate exists; (b) the issues sought to be arbitrated fall within the scope of the arbitration agree-

ment; and (c) the party against whom enforcement is sought has failed or refused to arbitrate. 9 U.S.C. §§ 2–4; *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). The Supreme Court recently reiterated that if the court determines these conditions are met, the court is *required* to direct the parties to arbitrate their dispute. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985). Federal policy strongly favors arbitration, and any doubts regarding the scope of the arbitration agreement should be resolved in favor of coverage. *E.g., Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

### a. *Agreement to Arbitrate*

DLJ claims its right to arbitration under the NASD Code of Arbitration Procedure arises out of the clearing agency relationship between DLJ and FCMC and Goldberg's status as an associated member of NASD. DLJ contends a valid written arbitration agreement exists because, as an associated member of NASD, Goldberg was bound to follow the NASD Code of Arbitration Procedure.[2] The NASD Code provides for arbitration of "any dispute, claim or controversy arising out of or in connection with the business of any member...." NASD Code of Arbitration Procedure, part 1, § 1, NASD Manual (CCH) ¶ 3701 (1985). The "business of any member" includes transactions between or among NASD members or between members and persons using the facilities of a registered clearing agency. *Id.* Section 8 of the Code provides that any such claim *"shall* be arbitrated under this Code, at the instance of ... a member against a person

---

U.S.C. §§ 3, 4 (see p. 4 *infra* ), which falls outside the ambit of Rule 12(b) motions that serve as responsive pleadings made in lieu of answers, the court notes that this jurisdiction has entertained such motions even though no answer has been filed. *First Citizens Municipal Corp. v. Pershing Division of Donaldson, Lufkin & Jenrette Securities Corp.,* 546 F.Supp. 884, 886 n. 1

(N.D.Ga.1982). Accordingly, this court will consider defendant's motions.

**2.** This court previously held that a valid arbitration agreement exists between DLJ and FCMC. *First Citizens,* 546 F.Supp. at 887–888. Defendant, however, has not contended that Goldberg is bound to arbitrate under that agreement.

associated with a member or a person associated with a member against a member...." *Id.* at ¶ 3708. (emphasis added). The NASD arbitration code mandates arbitration to resolve disputes falling within these provisions. Therefore, Goldberg is bound to arbitrate any such dispute if he is determined to have consented to abide by the NASD provisions and no other federal policy precluded the arbitration. *E.g., United Steel Workers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Cullen v. Paine, Webber, Jackson & Curtis, Inc.,* 587 F.Supp. 1520, 1522 (N.D.Ga.1984).

▉ NASD is a self-regulatory organization within the meaning of Section 28(b) of the 1934 Securities Exchange Act. 15 U.S.C. § 78bb(b); *N. Donald & Co. v. American United Energy Corp.,* 585 F.Supp. 533 (D.Colo.), *aff'd,* 746 F.2d 666 (10th Cir.1984). Thus, its members can agree to settle their disputes by arbitration. *N. Donald,* 585 F.Supp. at 535; *see Tullis v. Kohlmeyer & Co.,* 551 F.2d 632, 635–37 (5th Cir.1977). There is no requirement that such an arbitration agreement be signed by the party to be charged to be enforceable. Numerous courts have recognized that securities exchange members are contractually bound by the regulations of their organizations, including any arbitration provisions. *E.g., Tullis,* 551 F.2d at 635–37; *Coenen v. R.W. Pressprich & Co.,* 453 F.2d 1209, 1211 (2nd Cir.), *cert. denied,* 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972); *Cullen,* 587 F.Supp. at 1523. There is no dispute that Goldberg was "a person associated with a member" at the time this dispute arose. *See* 15 U.S.C. § 78c(a)(21). There is no indication he was unaware of the NASD arbitration requirements or that his consent to those requirements was obtained fraudulently. Accordingly, the court finds Goldberg and DLJ are parties to a valid arbitration agreement.

▉ Plaintiff objects to arbitration primarily on the basis that he no longer is an NASD member or associated member, and that his dispute arises out of his activities as an individual investor, not a broker or dealer. Neither of these circumstances precludes arbitration between him and DLJ. An arbitration agreement between securities exchange members applies to any dispute that arises while the parties were members. *O'Neel v. NASD,* 667 F.2d 804, 807 (9th Cir.1982); *Isaacson v. Hayden, Stone Inc.,* 319 F.Supp. 929 (S.D.N.Y. 1970); *see Cullen,* 587 F.Supp. at 1521–23. Furthermore, a stock exchange member cannot avoid arbitration of a dispute regarding his or her personal investment account with the argument that any exchange arbitration agreement applies to professional activities only. This circuit has recognized that exchange members are sophisticated investors, not inexperienced investors engaged in "impersonal open market" transactions; therefore, exchange arbitration agreements apply to disputes regarding their personal investment accounts as well as their official actions on behalf of their clients. *Tullis,* 551 F.2d at 638.

### b. *Arbitrability of Goldberg's Claims*

▉ Next, the court must decide whether the issues involved in this action are referable to arbitration under the NASD arbitration provisions. To resolve this question, the court must determine (1) whether the subject matter of plaintiff's claims falls within the scope of the arbitration agreement and (2) whether plaintiff asserts any statutory claims for which legal constraints outside the agreement preclude arbitration. 9 U.S.C. § 3; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.,* 473 U.S. 614, 105 S.Ct. at 3346, 3354–55, 87 L.Ed.2d 444 (1985).

The NASD Code of Arbitration applies to "any dispute, claim or controversy arising out of or in connection with the business of any member." NASD Manual (CCH) ¶ 3701. DLJ is an NASD member that contracted to perform clearing and execution services for FCMC, including for plaintiff's account. Although plaintiff has alleged ten separate substantive claims for relief in his complaint, all of those claims arise out of his dispute with DLJ over the

handling of his margin account, which is connected to the "business" of defendant. Indeed, Goldberg alleges in his complaint that DLJ acted as a broker/dealer and clearing agent for his account. Therefore, the court finds that all issues raised in this action fall within the scope of the NASD arbitration agreement.

■ Goldberg contends that, even if the court rules he is bound by the NASD Code, a number of his claims are not arbitrable because the NASD "cannot legally adjudicate" them. He cites no authority for this proposition. Presumably, he is relying on decisions rendered by this court and others before the Supreme Court's decision in *Byrd.* Since *Byrd* was decided, however, the scope of claims found to be arbitrable under securities industry arbitration provisions has expanded rapidly. This court has established that, given the broad reach of *Byrd,* claims brought pursuant to the 1934 Securities Act are arbitrable. *Ross v. Mathis,* 624 F.Supp. 110 (N.D.Ga.1985); *Pruzan v. Paine, Webber, Jackson & Curtis, Inc.,* No. C84–2016A (N.D.Ga. Aug. 29, 1985); *Raiford v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* [1985–86 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,269 (N.D.Ga. May 16, 1985) [Available on WESTLAW, DCTU database]. Similarly, RICO claims are arbitrable in this jurisdiction and others. *Ross,* 624 F.Supp. at 116–117; *see also Brener v. Becker Paribas Inc.,* 628 F.Supp. 442, 450 (S.D.N.Y.1985); *Bale v. Dean Witter Reynolds, Inc.,* 627 F.Supp. 650 (D.Minn.1986). Moreover, if the court determines the pendent state law claims to be arbitrable, it *must* compel arbitration of those claims. *Byrd,* 470 U.S. 216–23, 105 S.Ct. at 1240–43. The court previously concluded that all claims plaintiff has raised fall within the scope of the NASD arbitration clause. Furthermore, there is no statutory bar to arbitration of any of the state law claims. Accordingly, all pendent state claims raised by plaintiff must be arbitrated.

The issue of arbitrability of Goldberg's claim under section 17(a) of the 1933 Securities Act is a question of first impression in this circuit.[3] Prior to *Byrd,* the Supreme Court decision in *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), which barred arbitration of a claim under section 12(2) of the 1933 Act, was held to bar arbitration under any other provision of the 1933 Act (and often the 1934 Act as well). The *Wilko* court rejected arbitration of section 12(2) claims in part because section 12(2) provides an express private cause of action, which the court found created a "special right" that could not be avoided through arbitration. *Wilko,* 346 U.S. at 431, 74 S.Ct. at 184.

■ Federal courts generally have extended this analysis to bar arbitration of claims under other securities provisions, including section 17(a). That approach has been reexamined since *Byrd.* At least two courts that have considered the issue since *Byrd* have held claims under section 17(a) to be arbitrable because section 17(a) has no express private right of action. *Shotto v. Laub,* 632 F.Supp. 516 (D.Md.1986); *Brener,* 628 F.Supp. at 449. As Justice White observed in his concurring opinion in *Byrd,* the analysis of *Wilko* is "not necessarily appropriate where the cause of action is judicially implied" rather than expressly provided by Congress. 105 S.Ct. at 1244. Thus, the "special right" recognized in *Wilko* does not extend automatically to statutes for which there is no express private right of action. *See Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 514, 94 S.Ct. 2449, 2454–55, 41 L.Ed.2d 270 (1974); *Pruzan,* slip op. at 9–11. Moreover, as the New York and Maryland courts recognized, section 17(a) of the 1933 Act and section 10(b) of the 1934 Act are virtually identical. Therefore, these courts reasoned, once they concluded section 10(b) claims were arbitra-

---

**3.** There is a split among the courts of appeal regarding whether section 17(a) creates an implied private cause of action. *Compare Kirshner v. U.S.,* 603 F.2d 234 (2nd Cir.1978) (found right to private cause of action) *with Landry v.* *All American Assurance Co.,* 688 F.2d 381 (5th Cir.1982) (no private cause of action). However, DLJ did not raise this issue, so the court need not address it.

ble, there was no reason to prohibit arbitration of section 17(a) claims, and to do so would be inconsistent. *Shotto*, at 528–29; *Brener*, 628 F.Supp. at 449.

 This court agrees with the analysis of the courts in *Shotto* and *Brener*. Given the strong federal policy favoring arbitration, the absence of an express cause of action under section 17(a), and this court's prior holding that claims under section 10(b) of the 1934 Act, a similar provision, are arbitrable, this court concludes that Goldberg's claim under section 17(a) of the 1933 Act is arbitrable as well.

The only remaining claim is plaintiff's allegation that DLJ's decision to retain the funds in his account as a setoff against his wife's obligation constitutes a prejudgment attachment that results in a taking of his property in violation of the due process clauses of the federal and Georgia Constitutions. Goldberg contends this constitutional claim cannot be heard by an arbitration panel.

 This court is not persuaded by plaintiff's argument. He has not alleged—and the court is unable to find—any state action that would raise a constitutional question. DLJ's setoff claim arises solely between it and Goldberg in a private dispute. Arbitrability of a particular claim "depends not upon the characterization of the claim, but upon the relationship of the claim to the subject matter of the arbitration clause." *In re Oil Spill by the "Amoco Cadiz"*, 659 F.2d 789, 794 (7th Cir.1981). Goldberg's objection to DLJ's setoff action arises from the same dispute as the rest of his complaint. Consequently, it should be arbitrated with the rest of his claims. As the Second Circuit recognized in *Coenen*, a plaintiff should not be allowed to thwart

arbitration in a "garden variety securities fraud case" with a "perfunctory" allegation of a nonarbitrable cause of action. 453 F.2d at 1215–16; *see also Oil Spill*, 659 F.2d at 794.[4]

Accordingly, the court holds that Goldberg and DLJ are parties to a valid arbitration agreement, and that all claims raised in Goldberg's complaint are arbitrable. There is no question Goldberg has refused to arbitrate. Therefore, defendant's motion to stay proceedings and compel arbitration is GRANTED.

2. *Should Goldberg Be Required to Join as a Defendant in the Pending Arbitration Between DLJ and Phyllis Goldberg?*

DLJ devotes a major portion of its briefs to its argument that Goldberg should be required to join in the pending arbitration between DLJ and Goldberg's wife, Phyllis Goldberg, because he allegedly acted as her agent and joint tortfeasor. Plaintiff also argues at length that such joinder would be improper because his wife acted independently and because one spouse's property cannot be used to satisfy the debts of another. Apparently, DLJ has amended its arbitration claim to include Paul Goldberg, but he received permission from the arbitration panel to await this court's decision before filing his response.

The court finds that it does not have authority to determine whether Goldberg should be joined in his wife's arbitration proceeding. Once the court determines a dispute is properly referable to arbitration, all other issues, whether substantive or procedural, are to be determined by the arbitrator. *Prima Paint*, 388 U.S. at 403–05, 87 S.Ct. at 1806; *Warrior & Gulf*, 363 U.S. at 582, 80 S.Ct. at 1353. The *Prima*

---

4. Even if plaintiff had stated a clear cause of action for a constitutional violation, that claim nevertheless may be referable to arbitration. In *Carter v. Kurzejeski*, 706 F.2d 835 (8th Cir.1983), the Eight Circuit found that the arbitration procedure mandated by the union grievance procedural rules and the Civil Service Reform Act required arbitration of federal employee union members' first amendment claims, at least when judicial review of the arbitration award would

be available. *Id.* at 840–42. And in *Byrd,* the Supreme Court rejected the view that district courts should hear arbitrable pendent claims when a nonarbitrable federal claim is before them to avoid any preclusive effect of an arbitration award on the federal claim in a subsequent federal proceeding. The court concluded that the federal interest could be protected by "the formulation of collateral-estoppel rules." 470 U.S. 222, 105 S.Ct. at 1243.

*Paint* court acknowledged the clear intent of Congress as reflected in the Arbitration Act to avoid court delays and speed resolution of arbitrable disputes. The federal court can consider "only issues relating to making and performance of the agreement to arbitrate." 388 U.S. at 404, 87 S.Ct. at 1806. Now that the court has determined that the parties in this action are bound by a valid arbitration agreement that covers all issues raised, all other questions should be resolved by the arbitrators.

3. *Is DLJ Entitled to a Protective Order?*

Shortly after filing this action, plaintiff served defendant with interrogatories and a request for production of documents. Defendant has moved the court to extend the time for its response until after the motion to stay proceedings and compel arbitration was decided, or alternatively, to stay its obligation to answer indefinitely if the court grants the motion to compel arbitration.

The court agrees with DLJ that it should not be required to conduct discovery while this action is stayed pending arbitration. Such a requirement is precisely the sort of burdensome and expensive discovery the court is empowered to prevent. Fed.R. Civ.P. 26(c). Accordingly, all discovery in this action shall be stayed pending completion of the arbitration process.

## CONCLUSION

Defendant's motion to stay this proceeding and compel arbitration of all claims raised in plaintiff's complaint is GRANTED. Additionally, defendant's motion for a protective order staying all discovery until the arbitration proceeding is complete is GRANTED.