**W.L. JORDEN & CO., INC.**

v.

**BLYTHE INDUSTRIES, INC. and United Pacific Insurance Company.**

**Civ. No. 1:88–cv–1234–ODE.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 22, 1988.

Thomas Charles Blaska, D. Michael Sweetnam, Thomas C. Blaska & Associates, Atlanta, Ga., for plaintiff.

Kent Taylor Stair, Douglas Allen Wilde, Robert Michael Ethridge, Webb, Carlock, Copeland, Semler & Stair, Atlanta, Ga., for counter-defendant.

Harry L. Griffin, Jr., William Henry Parkman, Mahlon C. Rhaney, Jr., Griffin, Cochrane, Marshall & Elger, Atlanta, Ga., for defendants.

## ORDER

ORINDA D. EVANS, District Judge.

This action is before the court on a motion to stay proceedings pending arbitration by Defendants Blythe Industries, Inc. ("Blythe") and United Pacific Insurance Company ("United").

This claim arose after Defendant Blythe contracted with the Georgia Department of Transportation ("DOT") on December 7, 1982, to construct the Windy Hill Interchange Project in Cobb County, Georgia. United, as surety, executed Department of Transportation performance and payment bonds in connection with Blythe's work under the contract. The payment bonds allegedly guaranteed payment to subcontractors retained by Blythe for work done pursuant to the Federal Aid Project, which

purportedly was involved in financing the Windy Hill Interchange project. In January, 1983, Blythe hired Plaintiff to perform engineering and surveying work on the project. Blythe also contracted with Plaintiff for work on retaining walls at the project site.

Subsequently, the DOT assessed liquidated damages against Blythe for late performance. Defendants allege in counterclaims that Plaintiff's inadequate performance caused the delays. Plaintiff claims that Defendants refused to pay it for work performed pursuant to these subcontracts.

Defendants now move for a stay of this action pending arbitration. In support they cite Article X of the January, 1983 subcontract into which Blythe entered with Plaintiff. It states in pertinent part: "Arbitration of any controversy hereunder shall be at the sole option of the CONTRACTOR."[1]

Defendants also cite the Federal Arbitration Act as authority for granting a stay.[2] 9 U.S.C. § 3. They contend that this situation encompasses all the Act's requirements because the contract involves interstate commerce, at least one of the issues in the case is subject to the arbitration

agreement, the agreement is written and Defendants are not in default. Defendants likewise argue that Georgia law makes clear and unambiguous arbitration provisions in construction contracts binding.

In response, Plaintiff denies the existence of an enforceable agreement to arbitrate. Plaintiff argues that because the contract leaves the option of arbitration solely to the contractor, the clause is therefore unenforceable due to a lack of mutuality. Plaintiff claims also that the arbitration clause is unilateral and framed in clearly noncontractual language. Plaintiff cites an Eleventh Circuit case applying New York law for the proposition that unilateral agreements to arbitrate are unenforceable due to lack of consideration. *Hull v. Norcom, Inc.*, 750 F.2d 1547, 1550 (11th Cir.1985).

Defendants contend that the New York approach requiring mutuality in arbitration clauses in subcontracts is "unique to that state." *Willis Flooring, Inc. v. Howard S. Lease Construction Co.*, 656 P.2d 1184, 1185 n. 5 (Alaska, 1983). Defendants argue that under both Georgia and North Carolina law[3], arbitration clauses are not

---

1. Article X states in full:

 **Settlement of Controversies.**

 The SUBCONTRACTOR agrees that if any controversy arises between SUBCONTRACTOR or the CONTRACTOR and the Principal in respect to the amount, quantity, kind, classification, price, or value of the work performed or to be performed by the SUBCONTRACTOR, or in respect to the kind, character, condition, suitability, utility, price, or value of any material or supplies furnished, or to be furnished by the SUBCONTRACTOR, or in the proper interpretation of the plans, specifications, or original contract, or in respect to any alleged delay or delays in the prosecution or completion of the work made or caused to be made by the Principal, or in respect to any kind of labor or manner of performance thereof, or in respect to any other matter or thing pertaining to or connected with the work provided for herein, the CONTRACTOR may, in its discretion, compromise and settle the same with the Principal, and the tender to the SUBCONTRACTOR of the amount due or to become due to him under and according to said compromise and settlement shall operate to release the CONTRACTOR and the Principal and their property and the structure or structures or other works, covered by the

 original contract, and the whole thereof, and the surety of the CONTRACTOR from liability to the SUBCONTRACTOR for any sum of money or damages in excess of the amount so tendered. No controversy involving the SUBCONTRACTOR shall interfere with the progress of his work hereunder and he shall proceed with such work as directed. Arbitration of any controversy hereunder shall be at the sole option of the CONTRACTOR.

2. This section states:

 If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall, on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

3. The subcontract stipulates that it shall be interpreted in accordance with the law of North Carolina.

severable, thus the consideration supporting the contract as a whole likewise supports the arbitration clause. *Gaither Corp. v. Skinner*, 241 N.C. 532, 85 S.E.2d 909 (1955). They claim the contract must stand or fall in its entirety. O.C.G.A. § 13–1–8. Defendants also maintain that any doubts concerning arbitration must be resolved in their favor.

 The Federal Arbitration Act authorizes federal courts to stay proceedings where the contested issue is referable to arbitration under a written agreement. 9 U.S.C. § 3. In passing this section Congress sought to make arbitration agreements as enforceable as all other contracts. *Dees v. Distenfield*, 618 F.Supp. 123 (C.D. Cal.1985). Federal law determines the enforceability of arbitration clauses included in written contracts evidencing transactions involving interstate commerce. *First Citizens Municipal Corp. v. Pershing Division*, 546 F.Supp. 884 (N.D.Ga.1982). Any doubts regarding the scope of an arbitration agreement should be resolved in favor of coverage. *Goldberg v. Donaldson, Lufkin & Jenrette Securities Corp.*, 650 F.Supp. 222, 225 (N.D.Ga.1986). It is undisputed that the contract in this case falls within the ambit of the Federal Arbitration Act, in that the agreement is written and contained in a contract involving interstate commerce. 9 U.S.C. § 3.

 The arbitration clause contained in the contract Plaintiff signed in December, 1982, covers "any controversy hereunder." The clause refers to controversies arising from the price or value of the work, any kind of labor or manner of performance or from the proper interpretation of the original contract. Both Plaintiff's claim and the counterclaim fall within the scope of the broad language of this clause. *See Goldberg v. Donaldson, Lufkin & Jenrette Securities Corp.*, 650 F.Supp. at 225.

 The determinative issue is thus whether that clause is enforceable. The evidence indicates that Plaintiff assented to the contract as a whole, including the arbitration clause, when its president signed the contract. *See Georgia Power Co. v. Cimarron Coal Corp.*, 526 F.2d 101 (6th Cir.1975), *cert. denied*, 425 U.S. 952, 96 S.Ct. 1727, 48 L.Ed.2d 195 (1976). Judging from the agreement as a whole, Plaintiff intended to be bound. *Id.* Therefore, the court finds that these arbitration provisions are enforceable.

Plaintiff's argument that the arbitration provision is unenforceable for lack of mutuality because Defendant Blythe has the sole option to employ it lacks merit. All the cases cited for this theory were decided under New York law. Moreover, even the New York cases do not consistently adopt Plaintiff's approach. *See, e.g., Becker Auto-radio U.S.A., Inc. v. Becker Autoradio-werk GmbH*, 585 F.2d 39, 47 n. 15 (3rd Cir.1978); *Riccardi v. Modern Silver Linen Supply Co.*, 36 N.Y.2d 945, 373 N.Y.S.2d 551, 335 N.E.2d 856 (1975).

In this situation, where the agreement to arbitrate is integrated into a larger unitary contract, the consideration for the contract as a whole covers the arbitration clause as well. "If the requirement of consideration is met, there is no additional requirement of ... (c) 'mutuality of obligation.'" Restatement (Second) of Contracts § 79 (1981). Thus, the agreement to arbitrate is valid and enforceable.

Accordingly, Defendants' motion to stay proceedings pending arbitration is GRANTED. In light of this ruling, Plaintiff's request for oral argument is DENIED. The Clerk is DIRECTED to administratively close this file. The case may be reopened upon motion of either side.

SO ORDERED.